IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL K. KERSHAW,

       Plaintiff,

      v.

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY,

       Defendant.

No. CV 06-681-MO

OPINION & ORDER

**MOSMAN, J.,**

      Plaintiff Paul Kershaw brings this action for judicial review of the Commissioner's final decision denying his application for supplemental security income payments ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3). Based on the foregoing, the Commissioner's decision is affirmed, and the case is dismissed.

## BACKGROUND

      Mr. Kershaw was born on August 29, 1963. Tr. 74.[1] He left high school in the tenth grade and earned a graduation equivalency diploma serving a prison sentence. Tr. 662. Mr. Kershaw has no past relevant work, but he has worked sporadically as a cannery sorter, video sorter, and furniture repairer. Tr. 164-71. He was convicted of manslaughter and incarcerated from 1991 to 2002. Tr. 171, 194. Mr. Kershaw alleges onset of disability from September 1, 1990, due to psychotic disorder, panic disorder with agoraphobia, post traumatic stress disorder ("PTSD"), depressive disorder, and schizotypal personality disorder. Tr. 43. He filed for disability on March 26, 2003, and his application was denied initially and on reconsideration. A hearing was held before and

---

     [1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

administrative law judge ("ALJ") on February 14, 2005.  The ALJ issued an opinion on March 16, 2005, finding Mr. Kershaw not disabled, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); 20 C.F.R. § 416.920.  At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).  Here, the ALJ found Mr. Kershaw is not performing substantial gainful activity. This finding is not in dispute.

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement.  20 C.F.R. § 416.920(4)(ii).  If the claimant does not have such a severe impairment, he is not disabled.  Here, the ALJ found Mr. Kershaw has several severe mental impairments, including  schizoaffective disorder, anxiety disorder, schizotypal personality disorder, and a history of substance addiction disorder.  Tr.  18  He also found Mr. Kershaw has a severe impairment from the effects of acromioclavicular joint separation.  *Id.*  This finding is not in dispute.

At step three, there is a conclusive presumption that the claimant is disabled if the ALJ determines that his impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 416.920(d).  The criteria for these listed impairments are enumerated in 20 C.F.R. Pt. 404, subpt. P, app. 1 ("Listing of Impairments").  Here, the ALJ found

Mr. Kershaw's impairments do not meet or equal a listing.  This finding is in dispute.

If the adjudication proceeds beyond step three, the ALJ must assess the claimant's residual functional capacity ("RFC").  42 C.F.R. § 416.920(e).  The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments.  20 C.F.R. § 416.945; Social Security Ruling ("SSR") 96-8p.  Here, the ALJ found Mr. Kershaw retains the RFC to perform light level work with a lifting limitation of no more than five pound with his right arm.  The ALJ also found Mr. Kershaw has an average memory and concentration with episodes lasting about thirty minutes in which his memory or concentration is moderately impaired.  Finally, the ALJ found Mr. Kershaw has marked difficulties in maintaining social functioning.  Tr. 23.  This finding is in dispute.

At step four, the ALJ determines whether the claimant retains the RFC to perform past relevant work. If he does, the claimant is not disabled.  20 C.F.R. § 416.920(f).  Here, The ALJ found Mr. Kershaw has no past relevant work.  This is not in dispute.

Finally, at step five, the ALJ determines whether the claimant has the RFC to perform other work that exists in the national economy.  *Yuckert*, 482 U.S. at 142; 20 C.F.R. § 416.920(e), (g).  At this point in the analysis, the burden shifts to the Commissioner to show that there are a significant number of jobs in the national economy which the claimant can perform.  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  If the Commissioner meets this burden, the claimant is not disabled. *Id.*  Here, relying on testimony from a vocational expert ("VE"), the ALJ found Mr.  Kershaw retains the ability to work as a photocopy machine operator, laundry worker, and electronics worker.  Tr. 23, 689-95.  Mr. Kershaw disputes this finding.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Id.* The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

As indicated above, Mr. Kershaw alleges the ALJ erred at steps two, four, and five of the sequential analysis and in assessing his RFC. Mr. Kershaw contends the ALJ improperly assessed the opinions of his treating healthcare providers and the severity of his symptoms. He also asserts the ALJ applied improper standards for addressing his vocational limitations.

## I.    Medical Background

Mr. Kershaw was incarcerated from 1991 until 2002. Dr. Baxter diagnosed generalized anxiety disorder with panic attacks and mild depression in 1996. Tr. 205-07. Dr. Templeman conducted psycho-diagnostic examinations of Mr. Kershaw in 1998 and 1999. These examinations included testing, interviews, and review of records. He diagnosed both a thought disorder and a personality disorder. In 1999, Dr. Templeman diagnosed Schizoaffective Disorder, Depressive Type with Paranoid Features and Mixed Personality Disorder with Paranoid, Schizoid, and Antisocial Features. He noted a Global Assessment of Functioning ("GAF") of 40.[2] Dr. Templeman noted,

---

[2] The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning. A GAF of 31 to 40 indicates some impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. (e.g., depressed man avoids friends, neglects family and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). A GAF of 41 to 50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school

"he seems fairly content with the routine and structure of prison which suggests that without such structure he may decompensate further." Tr. 302-03.

Dr. Stanulis examined Mr. Kershaw in March 2000, and noted his symptoms had improved with ongoing treatment and psychiatric testing reflected a decrease in paranoia. He opined Mr. Kershaw was not a danger to the community, although ongoing treatment and medical management of his psychiatric disorders would be required. Dr. Stanulis diagnosed Schizoaffective Disorder and Maladaptive Personality Traits of Passive Dependency. Tr. 194-98. Mr. Kershaw was diagnosed with mild degenerative disc disease in his cervical spine in December 2000. Tr. 237. After his release from prison, he began treatment with Dr. Fellin, his primary care physician. In September 2002, Dr. Fellin noted that Mr. Kershaw's mental status was grossly normal and he continued Mr. Kershaw's prescriptions for elavil, protonix, and parafon forte. Tr. 441.

Dr. Cogburn, a state agency consultant, examined Mr. Kershaw on September 3, 2002. Tr. 260-266. She conducted testing and an interview. Dr. Cogburn diagnosed Adjustment Disorder with Depressed Mood, rule out Social Phobia, Schizotypal Personality Traits and a GAF of 52. She opined his activities of daily living were mildly impaired, his social functioning was moderately impaired, his attention "was not grossly impaired," and he had no history of decompensation. Dr. Cogburn further noted Mr. Kershaw could work at least half time. *Id.* Dr. LeBray, a state agency consultant, completed a Mental RFC form for Mr. Kershaw on September 26, 2002. He determined a limitation of no frequent public contact and recommended vocational guidance. Tr. 267-79.

Mr. Kershaw called the crisis line at Providence St. Vincent Hospital on September 27, 2002, due to severe anxiety and panic attacks. Dr. Stokes reported Mr. Kershaw has had hallucinations since childhood, but that they have increased since Mr. Kershaw committed manslaughter. He

---

functioning (e.g., few friends, conflicts with peers or co-workers). A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood or insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. 2000).

diagnosed Psychotic Disorder, NOS, Panic Disorder with Agoraphobia, rule out without Agoraphobia, Schizotypal Personality Disorder with Paranoid Features, Borderline Personality Disorder with a GAF of 45.  Dr. Stokes referred Mr. Kershaw to Western Psychological and Counseling Services ("WPCS") for therapy with Chris Hill, a Qualified Mental Health Provider.  Tr. 371-74.

Mr. Kershaw continued treatment with Chris Hill at WPCS and in October 2002, he was diagnosed with PTSD.  Tr. 330.  Chris Hill wrote to Dr. Fellin on November 26, 2002, stating Mr. Kershaw reported tactile and visual hallucinations and that he wanted a prescription for haldol.  Tr. 296.  Chris Hill further indicated Mr. Kershaw reported increased panic attacks and weekly hallucinations in December 2002.  Tr. 323.  Chris Hill wrote a letter on January 9, 2002, stating Mr. Kershaw had Panic Disorder without Agoraphobia, and PTSD symptoms, and that his symptoms were exacerbated by dealing with his mother's cancer, his sister's cancer, and injuries sustained from being struck by a car.  Chris Hill stated, "he reports impairment that would prevent him from being competitive in the work environment at his time.  With treatment, the client is likely to be able to return to competitive work."  Tr. 288.  Mr. Kershaw lost his insurance coverage and was discharged from WPCS to probation services on January 15, 2003, with a GAF of 50.  Tr. 343.

Mr. Kershaw was treated for a shoulder injury after being hit by a car on December 14, 2002.  He suffered an acromioclavicular separation.  He continued to experience shoulder pain and underwent acromioclavicular separation surgery in June 2003.  Tr. 397.

Dr. Anderson, a state agency consultant, assessed Mr. Kershaw's mental RFC in July 2003.  Dr. Anderson noted affective disorder and personality disorder with moderate limitations in the areas of social functioning and concentration, persistence, and pace.  Dr. Anderson also indicated Mr. Kershaw is capable of performing 1-2-3 step tasks at a job where public contact and intense interaction are not required.  Tr. 347-63.

Dr. Stokes examined Mr. Kershaw in the Mental Health Crisis Program at Providence St. Vincent Hospital on August 7, 2003.  Tr. 365-70.  He diagnosed Psychotic Disorder, NOS, Panic

Disorder with Agoraphobia, Major Depressive Disorder, PTSD secondary to his fight, Schizotypal Personality Disorder with Paranoid Features, and a GAF of 45. He reported Mr. Kershaw was experiencing increased suicidal ideation, uncontrollable crying, and that halperidol had decreased his nightmares. Dr. Stokes treated Mr. Kershaw on August 13, 2003, and noted hallucinations, daily crying, and suicidal thoughts. Tr. 363.

Mr. Kershaw received state mental health services from Dr. Kuttner, a psychiatrist, and Lori Danker, a psychiatric mental health nurse practitioner ("PMHNP"), at Homestreet, Inc. In February 2004, Dr. Kuttner diagnosed Psychotic Disorder, NOS, Personality Disorder, NOS, and a GAF of 35. Tr. 633-35. In March 2004, PMHNP Danker noted that the medications were keeping Mr. Kershaw's symptoms mild and minimally disruptive. Tr. 632. In May 2004, she noted Mr. Kershaw was experiencing hallucinations with paranoid ideation and a GAF of 40. Tr. 630. PMHNP Danker prescribed an additional medication for Mr. Kershaw's ongoing symptoms in June 2004, and noted a GAF of 64. Tr. 629. Finally, in August 2004, she reported Mr. Kershaw experiences hallucinations and nightmares, had a flat affect, and a GAF of 45. Tr. 627.

Mr. Kershaw was arrested on June 3, 2004, for allegedly assaulting his sister, and he made a suicide attempt while in jail. Tr. 479-84. In September 2004, he was treated in the Emergency Room for injuries he received from an assault or fight. Tr. 466.

Dr. Crossen testified as a medical expert ("ME") at Mr. Kershaw's February 2005, social security hearing. He diagnosed Schizoaffective Disorder, and Schizotypal Personality Disorder with the possibility of other personality disorders. Dr. Crossen testified Mr. Kershaw has mild limitations in his activities of daily living, and marked limitations in social functioning. Dr. Crossen also testified the objective medical evidence indicates mild limitations in concentration, persistence, and pace. He found no extended periods of decompensation. Tr. 680-89.

## II. Step Three Determination

Mr. Kershaw alleges the ALJ erred in failing to find his mental impairments meet or equal a listing. At step three, the claimant has the burden of showing through medical evidence that his

impairments meet or equal all of the specified medical criteria contained in a particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Mental impairment listings also include degree of limitation ratings for four additional categories of function: 1) restriction of activities of daily living; 2) difficulties in maintaining social functioning; 3) deficiencies of concentration, persistence or pace; and 4) episodes of decompensation of extended duration. These are known as the "B criteria." 20 C.F.R. Pt. 404, subpt. P. app.1, 12.00. In this case, Mr. Kershaw must show marked limitation in two of the four categories to meet a listing. 20 C.F.R. § 416.920(a)(4)(iii).

Mr. Kershaw argues the GAF scores given by his treating mental health providers are indications of marked deficiencies in concentration, persistence, and pace. However, the ALJ accepted ME Crossen's opinion that Mr. Kershaw does not meet the B criteria. Dr. Crossen testified that although Mr. Kershaw has a marked deficiency in social functioning, the objective medical record indicated only mild limitations in concentration, persistence, and pace. Additionally, as the ALJ noted, Dr. Cogburn, the examining psychologist, did not find a marked impairment in concentration, persistence, and pace. Tr. 18. As noted above, GAF scores are used by clinicians to assess overall level of functioning, usually within a certain time frame. Dr. Crossen testified:

> Q: . . . Would global assessments of functioning of 45, or, or below repeatedly demonstrate symptoms severe enough to be at least marked at the time those assessments were given -
> A: Symptoms -
> Q: - and ability to concentrate?
> A: There's no way to know. The global assessment of functioning is, is so indistinct as to be uninterpretable for, for your question.
> Q: Okay. So you don't recognize it as a diagnostic measure?
> A. I recognize it as a diagnostic measure, yes.
> Q: So, what is the significance of it then?
> A: It's a general clinical impression that derives from a, a rating scale developed about close to forty years ago in the 1960's. It just tends to, in terms of what it measures, it seems to be just measuring the self-reported symptom intensity of a, of a given patient. It doesn't really have any evidence that shows any validity in terms of the residual functioning characteristics that you spoke about.

Tr. 686-87.

The record contains mental health treatment and evaluation records between 2002–when Mr.

PAGE 8 - OPINION & ORDER

Kershaw was released from prison–and 2004.[3]  Mr. Kershaw's GAF scores most consistently fall in the category of 41 - 50 and 51-60.  A GAF of 41 to 50 indicates serious symptoms or impairment in social, occupational, or school functioning.  A GAF of 51-60 indicates moderate symptoms or difficulty in social occupational, or school functioning.  Occupational impairment is only one of the possibilities for assigning a GAF in these categories.  There is no reference to concentration, persistence, or pace in the GAF numbers.  Dr. Crossen testified the record indicated a marked limitation in social functioning, which is consistent with the clinical notes and GAF scores.

Mr. Kershaw has not advanced any theory, other than the GAF scores, to articulate why his condition meets or equals a listing.  Thus, I find he has failed to meet his burden of proving his impairments meet or equal a listing.  *Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005).  The ALJ adequately discussed all of the medical evidence, including GAF scores, and he adopted Dr. Crossen's opinion, which is consistent with Dr. Cogburn's opinion.  The ALJ's determination was based on substantial evidence in the record.

## III.    RFC Determination

### A.  Treatment Providers

In contesting the ALJ's assessment of his RFC, Mr. Kershaw again asserts the ALJ improperly rejected his GAF scores, as reported by several of his mental health treatment providers, and improperly relied on Dr. Crossen's opinion.  A treating physician's opinion is controlling when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with substantial evidence in the record.  20 C.F.R. § 416.927(d)(2).  The ALJ can reject a treating physician's opinion that is not contradicted by another physician only for clear and convincing reasons.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  However, an ALJ can reject a treating physician's opinion that is controverted if he makes "'findings setting forth specific,

---

[3]The GAF scores in the record are, in chronological order, 45, 52, 50, 50, 55, 55, 55, 55, 55, 60, 60, 60, 55, 50, 50, 50, 50, 45, 35, 35, 45, 40, 64, and 45.  Tr.  374, 266, 325-33, 322-23, 318-20, 343, 370, 634, 632-33, 639-40, 627.

legitimate reasons for doing so that are based on substantial evidence in the record.'" *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Mr. Kershaw does not cite an opinion from a treating physician that he is unable to work. Instead, he asserts the various GAF scores provided by different types of providers, including those from a counselor and a nurse practitioner, are equivalent to a treating physician's opinion that he cannot work. However, as previously discussed, GAF scores are not necessarily indicative of occupational impairments or limitations.

The ALJ discussed all of the medical evidence, including the GAF scores, and stated: "While it is possible that an individual with the claimant's impairments might experience periods of exacerbation of symptoms resulting in more significant limitations in concentration, persistence, and pace, there is no description of such episodes in the claimant's medical record." Tr. 20-21. He also cited Dr. Crossen's testimony that GAF scores do not reflect residual functional characteristics, and noted while Dr. Cogburn assigned a GAF of 52, she also opined Mr. Kershaw could work part time. *Id.* The ALJ further noted the state agency consultants concluded Mr. Kershaw could work jobs with simple tasks and limited social interaction. I find the ALJ did not err in relying on this evidence in assessing Mr. Kershaw's RFC. The ALJ gave specific and legitimate reasons for his determination, which was based on substantial medical evidence in the record.

### B. Credibility Determination

Mr. Kershaw asserts the ALJ failed to properly evaluate his testimony regarding his symptoms. When there is objective medical evidence of an underlying impairment that could produce the reported symptoms and no evidence of malingering, an ALJ may only discredit a claimant's testimony regarding the severity of symptoms for clear and convincing reasons based on specific findings. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). Mr. Kershaw has medically determinable impairments that could produce his reported symptoms.

In assessing credibility, the ALJ may consider objective medical evidence and the claimant's treatment history, including the effectiveness of medications. *Id.* at 1284-85. Here, the ALJ found

PAGE 10 - OPINION & ORDER

Mr. Kershaw's assertions of disability are inconsistent with his treatment record.  Mr. Kershaw was treated with medications and counseling for his mental illness.  Dr. Stanulis noted improvement with ongoing treatment. Tr. 17, 197.  Dr. Cogburn noted that despite his impairments, Mr. Kershaw could work at least half time.  Tr. 20, 266.  In January 2003, Chris Hill, Mr. Kershaw's counselor, noted that his symptoms were exacerbated because his mother and sister had cancer and he was recovering from being struck by a car, and opined that with treatment, Mr. Kershaw would likely be able to return to work.  Tr. 288.  PMHNP Danker also reported in March 2004, that Mr. Kershaw stated the medications were working and his symptoms were mild and minimally disruptive.  Tr. 632.

The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Thomas,* 278 F.3d at 958-59.  On this point, the ALJ found Mr. Kershaw's daily activities are inconsistent with the severity of his allegations.  Specifically, the ALJ found he is able to bicycle, go to a fitness club, and, at least on one occasion, to a party.  Tr. 19-20.  He also noted Mr. Kershaw's sister-in-law testimony that Mr. Kershaw leaves home daily to go to the library, workout at a fitness center, ride his bicycle, and rent videos.  Finally, the ALJ cited Mr. Kershaw's friend, Kenneth Phillips, describing that Mr. Kershaw has an active lifestyle of going to the store, playing guitar, completing art projects, cooking, and working on household chores.  While a claimant need not be "utterly incapacitated in order to be eligible for benefits," *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989), the ability to perform daily household chores may indicate an ability to work. *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995).  Further, where a claimant's type and level of activity is inconsistent with his claimed limitations, this evidence does bear on his credibility.  However, a disability claimant does not need to be "utterly incapacitated in order to be eligible for benefits." *Fair,* 885 F.2d at 603.

The ALJ may also employ "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other

statements by the claimant that appear to be less than candid." *Smolen*, 80 F. 3d at 1284; *see also* SSR 96-7p. The ALJ noted several inconsistencies in Mr. Kershaw's statements. First, Mr. Kershaw testified he has experienced hallucinations since the 1980's, yet he denied having hallucinations to Drs. Cogburn and Baxter. Tr. 19, 206-07, 264-66. Likewise, Mr. Kershaw testified he was unable to go out and do things due to anxiety and panic symptoms, but as discussed above, he routinely goes on bike rides, works out at a fitness center, goes to the library, and he also occasionally goes shopping. The ALJ further noted Mr. Kershaw's testimony that his shoulder pain is sometimes so severe he is unable to get out of bed is inconsistent with the record regarding his shoulder pain, including lack of treatment or medication for ongoing shoulder pain. Tr. 19. For all the reasons discussed above, I find the ALJ gave clear and convincing reasons for rejecting Mr. Kershaw's assertions regarding his ability to work. The ALJ's credibility assessment is based on substantial evidence in the record.

Mr. Kershaw asserts the ALJ erred by not including all of his limitations in his RFC. However, the ALJ determines an RFC based upon limitations for which there is a record. "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary. *Bayliss v. Barnhart,* 427 F.3d 1211,1217 (9th Cir. 2005).

## IV.  Step Five Determination

Finally, Mr. Kershaw asserts the ALJ erred because the hypothetical question posed to the VE did not include all of his asserted limitations. The ALJ developed the following RFC for Mr. Kershaw:

> . . . the residual functional capacity to walk 4 blocks at a time. He can sit 2 hours at a time. He can lift 20 pounds occasionally and 10 pounds frequently with the left upper extremity. He can lift 5pounds occasionally with the right upper extremity. His memory is generally average but he experiences episodes of decompensation lasting about thirty minutes in which his memory is moderately impaired. His concentration is also average but moderately impaired during times of panic or hallucinations. He does not drive. He has marked difficulties in maintaining social functioning.

PAGE 12 - OPINION & ORDER

Tr. 23.  Mr. Kershaw asserts that his RFC should have included a thirty-percent productivity deficiency due to his limitations in concentration, persistence, and pace.  VE testimony based on a hypothetical question that does not reflect all of the claimant's limitations has no evidentiary value. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (citations omitted).

As discussed above, the ALJ evaluated the evidence and reached an RFC assessment that reflected the limitations reasonably supported by the evidence.  He did not find Mr. Kershaw has an impairment resulting in a thirty-percent reduction in productivity.  The ALJ was not required to pose a hypothetical that contained limitations he did not find were supported by substantial evidence in the record.  *Osenbrock v. Apfel,*  240 F.3d 1157, 1164-1165 (9th Cir. 2001).  He elicited VE testimony based on a hypothetical question that included all of the limitations included in the RFC assessment.  And based on this hypothetical, the VE testified there are jobs in the national economy that Mr. Kershaw can perform based on his age, education, and experience.  Tr.  692.  It was proper for the ALJ to rely on the VE's answer to a hypothetical that contained all of the limitations supported by substantial evidence.  *Bayliss,* 427 F.3d at 1217-18 (9th Cir. 2005).  I find the ALJ did not err in concluding Mr. Kershaw has the RFC to perform work that exists in the national economy and is therefore not disabled.

## **CONCLUSION**

Based on the foregoing, the ALJ's decision finding Mr. Kershaw not disabled is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this   22nd   day of May, 2007.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

PAGE 13 - OPINION & ORDER